Our next case for argument this morning is Hatt Franchising v. Shen Zhen New World. Mr. King. Good morning, Your Honors, and may it please the Court. Shen Zhen New World I, LLC makes this appeal to vacate the arbitrator's award in this case on three bases. First, that the arbitrator's refusal to permit Shen Zhen to develop and present evidence from Shen Zhen's principal negotiator of the franchise agreement at issue in this case, Lynn Cadwallader, deprived the proceedings of fundamental fairness and that it should be vacated under Federal Arbitration Act Section 10A3. Second, that the arbitrator's award manifestly disregarded applicable franchise law and should be vacated under FAA Section 10A4. And third, that the award violates public policy. Well, 10A4 says where the arbitrators exceeded their powers or so imperfectly executed them that a mutual final and definitive award was not made. Are you contending that there was no definitive award? What we contend, Your Honor, is that... that does not come within 10A4. The law in this circuit could not be clearer on that score. And you proceed as if, well, basically as if the law in this circuit were 180 degrees opposite to what it is. You haven't asked us to overrule cases like Watts. You just asked us to ignore them.  The appellants acknowledge, Your Honor, that it's a very difficult path to tread. What we held in Watts is that an error of law is a basis for setting aside an arbitrator's award if and only if the arbitrator has told the parties to violate the law to the detriment of third parties and you don't make any such argument. So I don't see what the contention could be unless we overrule Watts, which you haven't asked us to do. Your Honor, Watts sets out that after Eastern Associated Coal Corporation at 531 U.S. 57, that the manifest disregard principle is limited to two possibilities, as Your Honor points out, that an arbitral order requires the parties to violate the law as by employing unlicensed truck drivers. And in Eastern Associated Coal Corporation, the court found that Congress had empowered the Department of Transportation to promulgate regulations that related to sanctions for drug use and at the same time cited in its regs the importance of rehabilitation and found that the arbitration award in that case did not manifestly disregard the law because it was consistent with both of those two purposes of the regulations. Here, the award condones Hyatt's violation of the disclosure requirements under the FTC regulations which require disclosure of material changes to franchise agreements. So you think the arbitrator misinterpreted the statutes? No, what we argue here, Your Honor, is that the arbitrator acknowledged the law and then said even if you broke the law, Hyatt, that's okay because there's no private right of action under the FTC but the disclosure requirements go to the heart of our unconscionability argument. So he misinterpreted the legal consequences of what you say is a statutory violation? The arbitrator said that the violation of the standard, the FTC standard and also the California standards, did not apply to Hyatt but that there was... It doesn't get you out from under the contract. Yes. Why isn't that pretty obviously what you bargained for in getting a decision from an arbitrator? Well, what you're not bargaining for when you go to an arbitrator is for the arbitrator to acknowledge the law, say that it applies to one of the parties and then to ignore it. Speaking of ignoring, does this have to do with the liquidated damages provisions? Is that what we're talking about? As to manifest disregard, Your Honor? Yeah. Well, I'm not sure I understand the question. Well, your brief, for example, tells us that the arbitrator conveniently ignored that as originally disclosed none of the liquidated damages provisions would have been applicable to Shenzhen.  I look at pages 57 and 58 of the appendix and I see what looks like the arbitrator engaging on that issue. I express no view on whether he's right or wrong, but he doesn't seem to ignore it. Well, the arbitrator... The arbitrator doesn't ignore the issue of liquidated damages in total, Your Honor. It's very much at the heart of his award, and certainly as it relates to... And again, I'm sorry, Your Honor, and I apologize. I'm not sure that I understand the question here. Well, let me shift gears to something else then. Is it correct that Defendant Shenzhen terminated Attorney Cadwallader's representation of it back in October of 2012? That's what we're told by Hyatt. That she was terminated in October of 2012? That the representation, the attorney-client relationship, came to an end about a month after this deal closed. Counsel, this seems like a fairly central point here. Well, Your Honor, the representation by Holland and Knight continued thereafter. I'm sorry, the what? The representation... I'm sorry. Could you repeat that? Let me quote Hyatt's brief. Yes, Your Honor. Page 9, footnote 6. Yes, Your Honor. Shenzhen terminated its relationship with Ms. Cadwallader in October of 2012, less than one month after it executed the franchise agreement. Is that correct? Yes, Your Honor. Thank you. Let me ask you this. Was there any evidence, other than sheer speculation, that Lynn Cadwallader was acting on Hyatt's behalf? Rather than in Shenzhen's interest at the time that the contract was negotiated? We have no positive evidence in the record, Your Honor, that Lynn Cadwallader was acting on Hyatt's behalf. We were deprived of that evidence, the opportunity to develop and present that evidence of the arbitration by the arbitrator's repeated refusals to allow us to get evidence from her and his contemporaneous decision to allow evidence from Ms. Cadwallader through her declaration, which we were not able to cross-examine her on by virtue of his order. Her arbitrator held, it seems to me, that discovery regarding her was denied because Shenzhen originally sought her testimony only on the grounds that her testimony would be relevant to the negotiation of the unambiguous agreement and or on a conflict issue regarding DLA that the arbitrator had already resolved. Prior to the end of the hearing, did Shenzhen seek discovery to explore irregularities in the contracting process and whether she zealously negotiated the franchise agreement? If the answer is yes, I would really appreciate knowing where she is in the record. Yes, Your Honor. So Shenzhen, at all times throughout the arbitration, made the arbitrator aware of the centrality of Ms. Cadwallader. The arbitrator himself acknowledged that her representation of Shenzhen in the negotiation of the franchise agreement was at the heart of the case, and Shenzhen requested Ms. Cadwallader's testimony on three separate occasions and was denied at each juncture. So Ms. Cadwallader admitted her role in the evidence that the arbitrator allowed from her on behalf of Hyatt through her declaration. Shenzhen was denied the opportunity to cross-examine her on that. Shenzhen told the arbitrator that if they were allowed one third-party witness subpoena, that that would be to Lynn Cadwallader on these issues, and he denied it. Mr. Counsel, for decades, corporate counsel and promoters of alternative dispute resolution have been pushing arbitration as a faster, cheaper alternative with little or no discovery, an alternative to conventional federal civil litigation. It sounds like you're asking us to second-guess an arbitrator's decision on discovery here. Your Honor, this is not a discovery dispute. This is a—the parties were allowed to have a third-party subpoena. Third-party subpoenas were issued by the arbitrator. The arbitrator, on one day, says that this person is at the—has information— is—her role is central to the issues that are at the heart of this case. This court recognized in McAuliffe v. Glick in 2014 that where the sole evidence on a pivotal issue is denied to a party and where the evidence that forms that evidence is material and pertinent, where the arbitrator here says she has—her representation is at the center of this case and then a couple of days later says, I don't find her to be someone who has pertinent and material evidence. Is this pertinent for what, unconscionability? Many of your claims appear to center on your dissatisfaction with her representation in this matter. But isn't that a basis for a malpractice action rather than a challenge to a—you know, to an arbitrator's decision? Your Honor, our claims against Ms. Cadwalader are independent and do not affect Shenzhen's rights in this case. The—what Shenzhen is seeking is to establish evidence that supports its contract formation defenses here. Lynn Cadwalader was the primary negotiator of the franchise agreement at issue here. In McAulvey-Glick, this court found that the standard set forth in Tempo Shane in the Second Circuit was one which—where the sole evidence on a pivotal issue is deprived of one of the parties. That deprives the hearing of fundamental fairness. Is this going to your concept that the chairman of your client claims he only negotiated or was only aware of 10 percent of the terms? The chairman testified that way. Was that measured in words as opposed to importance? Well, the important—some important terms, the length of the agreement, the key money terms, the chairman testified that he negotiated those. But as to all the others, Your Honor, importantly, liquidated damages, termination, and the terms related to the property improvement plan, all of those were negotiated by Lynn Cadwalader. She was the one in the room with Hyatt to negotiate them, and we've been deprived of the opportunity to examine her. And she was an agent—she was clearly an agent of your client, correct? Yes, Your Honor. She was the principal negotiator. Suppose she'd been an in-house lawyer. Would there be any—would your position be any better or worse in terms of whether the company agreed to the terms that it agreed to? If she's made unavailable to us, on the fundamental fairness argument, Your Honor, it would make no difference. I'm trying to imagine a company—this is a pretty unusual theory. I'm trying to imagine a company say, we've got to get—we have a complete defense. The contract is not valid because our lawyer who negotiated the terms, what, didn't do a good job? It's not that she didn't do a good job, Your Honor. It's that we have no evidence of the negotiations themselves from her. Who cares? You've got an integrated agreement. Except that we have contract formation defenses that allow for parole evidence. You know, I am really mixed up because it seems to me that, you know, your big complaint is the refusal to allow discovery into what you are alleging are her conflict issues. But the arbitrator determined that such evidence wouldn't be relevant to the issues before it, which is whether the franchise agreement was ambiguous or flawed at the time of contracting. And for the life of me, I have not seen in the briefs, at any rate, or today, you pointing to any ambiguous language for which her testimony would be relevant. And, you know, the claim of a conflict wasn't raised until the end of the hearing, and on different grounds that it would be relevant to the negotiation of this unambiguous agreement or a conflict issue regarding the law firm that the arbitrator had already resolved. So, I mean, you know, I'm a little lost here. With respect, Your Honor, the property improvement plan at issue here was incorporated into the franchise agreement. And numerous terms in the property improvement plan were open and ambiguous at the time of contract formation. And Shenzhen was deprived of its opportunity to get the sole evidence on the issue of how the negotiations took place, what was negotiated, what was bargained for. And Lynn Cadwallader was the sole person on that. And in the arbitration proceeding, Shenzhen was denied at numerous junctures, despite the arbitrator's admission that her representation was at the heart of this case, that Shenzhen was denied the opportunity to cross-examine her on her declaration, which he did allow into the record, and was denied an opportunity to examine her on the course and scope of the negotiations that took place here. Thank you, counsel. Thank you, Your Honor. Shenzhen respectfully requests this court vacate the award. Mr. Leone. Good morning, Your Honors. May it please the court. Unless the court has questions, I don't intend to spend a significant amount of time addressing Shenzhen's claim that the arbitrator manifestly disregarded the law as it concerned Shenzhen's claims under the FTC rule or under the California Franchise Investment Law. This court's precedent could not be clearer. Judge Easterbrook, your opinion in the Affomax case is right on point. It's not my opinion. It is the court's opinion. It is the court's opinion. Thank you, Your Honor. Unless an award directs the parties to violate the rights of third parties who are not parties to the arbitration agreement, there is no claim of manifest disregard of the law. That is not presented here. Is the contract with Shenzhen materially different from the contract used by Hyatt with its other franchisees? Well, it is materially different, Your Honor, in that this agreement was substantially negotiated. It was negotiated over the course of six months, not just as to its legal terms but as to its business terms. I will tell Your Honor that other contracts are not part of the record, but the short answer to your question is yes, this contract is somewhat different in that it was substantially negotiated. Now, one last point, Your Honors, on the manifest disregard standard. Even if the court was to go back to the old standard pre-George S. Watts, it would make no difference. The arbitrator extensively discussed over the course of eight pages in his award why the claims under the FTC rule had no merit and why the claims under the California Franchise Investment Law had no merit. Under this court's clear precedent, those conclusions are not reviewed. Whether they're right or wrong, it makes no difference. Those were the arbitrator's conclusions, and those are binding. I'd like, with the court's permission, to focus on what has become the focus of Shenzhen's appeal, and that is that they were supposedly denied the opportunity to get the sole evidence on some pivotal issues relating to the contract formation defenses. I think the claim is a bit difficult to understand because even on this appeal, we don't know what that evidence is. That's because this is not really a fundamental fairness claim. This is a dispute about a discovery ruling, and the precedent is clear that courts do not sit and review arbitrators' discovery rulings. If it was not a discovery dispute, Shenzhen would presumably be able to tell us what evidence their former attorney was going to present. But again, here, even on this appeal, we don't know what that evidence was going to be. But I gather Ms. Cadwallader is still a partner of yours. Yes, Your Honor. I'm sorry, Judge Rovner? Sorry. You see, there's a little bit of a delay, so sometimes I step on the other judges. And vice versa. Sorry about that. That was me. But, I mean, you know, how would Shenzhen obtain, you know, any information, you know, to ensure that the contract did not favor HIAF if it's not allowed to depose Cadwallader? I mean, I understand, but how could they have done that? Do you have any idea? I think there's two answers to your question, Your Honor. The first is that there is simply no authority for reviewing a discovery ruling, especially where the parties agree to a set of rules that gives the arbitrators complete discretion to determine what discovery is going to be conducted. And I'd also point out that those rules, the commercial arbitration rules, make no provision for the taking of any depositions. But that aside, the second point, and I think the more salient point, is that if Shenzhen was going to claim, as they're claiming now, that this evidence was sole and important to these pivotal issues, they could at least tell the court what they hoped the evidence would be. There's never been a proffer. And I think if we get into the Mykal versus Glick standard, it's clear that nothing that Ms. Cadwallader could possibly say had any bearing on any issue, let alone a pivotal issue. Let's take the first one that Shenzhen focuses on, which is its claim that there was some misunderstanding as to the scope of the property improvement plan and the deadline for completing those renovations. First, Ms. Cadwallader's testimony, whatever it might have been at deposition, has no bearing on that issue, and it's not the sole evidence. In fact, Shenzhen cross-examined or deposed every person from Hyatt who was involved in negotiating the business terms of that deal. That included Jim Chu, Emily Kipe, and Kimo Bertram. In fact, Shenzhen devotes a full section of one of its supplemental briefs, and this appears at pages A243 to 244, to discussing Hyatt's understanding of the scope of the renovations and the deadline for completing those renovations. There were also documents showing the negotiation of the property improvement plan, which Shenzhen, for whatever reason, chose not to introduce. Those, in fact, are referenced in one of Shenzhen's own briefs at page A163. So there is simply no basis for claiming, even if this quote was to get to the Mykal standard, that this was the sole evidence as to the party's understandings as to the scope of the renovations. But more importantly, this is not just not a pivotal issue, this is not an issue at all. The arbitrator determined, first, that it was not impossible to meet the original deadline. That factual finding is not reviewable, and it cuts the legs out from Shenzhen's claims that this was some pivotal issue  He also concluded that if there was an issue, that issue was cured by extending the deadline to January 2014, a date that Shenzhen itself picked after all of the issues, according to the arbitrator, regarding the design of the hotel had been remedied. So again, we think that there's no basis for proceeding on their claim of impossibility or mutual mistake because the very predicates of those claims were rejected by the arbitrator. Shenzhen's claim that it needed Ms. Cadwallader's testimony to address its claim of unconscionability, again, Shenzhen makes no proffer. What evidence did they hope to get from Ms. Cadwallader? There is nothing in the record. This is just a bare assertion that because we did not get the chance to take a deposition, we didn't get to put on everything that we wanted. And arbitral awards are not vacated on those grounds. Regardless, the arbitrator rejected the unconscionability, I apologize, theory on two bases, neither of which have any bearing on what Ms. Cadwallader might have said at deposition. First, the arbitrator concluded that there was no oppression or surprise. That means that there was no procedural unconscionability. The agreement had been negotiated. The parties had equal bargaining power. Shenzhen received a copy of the franchise agreement over two months before it signed it. Shenzhen makes much of the fact that its chairman did not speak English and couldn't understand the agreement. That's, of course, irrelevant, as the arbitrator found, and as this Court has repeatedly found. It was represented by a business consultant and it was represented by counsel. As Your Honors noted, Shenzhen makes much of its counsel's zealousness or perhaps her competence, but the arbitrator made clear that those issues did not go to the enforceability of the franchise agreement. Even if Ms. Cadwallader was not zealous in her representation, even if she was conflicted, and there was no evidence of either, it made no difference. His determination was that it was a binding enforceable agreement and that conclusion of law is not reviewable. Even if you ignored the procedural unconscionability element, the arbitrator also determined that the agreement itself was not substantively unconscionable. He said that while some terms favored Hyatt, there was no basis for concluding that the agreement shocked the consents. Again, that was a determination that was based simply on the terms of the agreement. Even if you cut out the procedural unconscionability element, you have to show both to prove unconscionability, and they could not do that here. Mr. Leon, does the record tell us anything about why the conflict was not picked up earlier, the moment that Ms. Cadwallader joined your firm? According to the arbitrator's opinion, and that's what I'll go by, Your Honor, there was not a clear understanding as to why it was not picked up when she first joined the firm. The best explanation that we have is that she had not done any work for Shenzhen since October of 2012, because Your Honor noted that the representation ended at that point. So I'm assuming, and again, it's just simply my assumption, that she did not believe that it needed to be disclosed on the conflict lateral form. Coming from the world of civil litigation, it's a little unusual to see a witness who gets to submit an affidavit and not be subject to deposition by the other side. I think, Your Honor, that Shenzhen's characterization of what this affidavit was and what it said stretches the truth a bit, to put it mildly. All that Ms. Cadwallader's affidavit discussed was the scope of her representation. There was nothing confidential disclosed, there was nothing addressing the merits of this dispute, and the only way it was relevant was in connection with the disqualification motion. It had absolutely nothing to do with the merits of any dispute here. And the arbitrator resolved that motion on two legal grounds, neither of which are assailable and neither of which depend at all on Ms. Cadwallader's affidavit. In fact, the arbitrator concluded that Ms. Cadwallader's prior representation was substantially related to this issue. The arbitrator denied the disqualification motion after he concluded that Illinois law applied because he decided that under the current version of the Illinois Rules of Professional Conduct, the wall that was implemented by DLA Piper was timely implemented, notwithstanding the fact that it was not implemented the day that she arrived at the firm. Again, that has absolutely nothing to do with what Ms. Cadwallader said or did not say in her declaration, and it has absolutely nothing to do with what Shenzhen might have gotten out of her at a deposition. It's a legal conclusion based upon his interpretation of the Rules of Professional Responsibility, and it is unreviewable. Shenzhen's claim that they needed to depose Ms. Cadwallader to address their claims that Hyatt violated the disclosure laws, again, there's never been a proffer as to what she might have said on these issues, and I will note, for your honours, that the disclosure document that's the premise of these claims was delivered to Shenzhen a month before Ms. Cadwallader was even hired. But I think the two more important points are that these disclosure-based claims were not raised by Shenzhen until three weeks after the evidentiary hearing closed. It is candidly difficult to understand how Shenzhen can take the position that the arbitrator unfairly excluded evidence on claims that were first raised after the evidentiary hearing was closed. Secondly, when Hyatt complained about the timing of these new claims, which were not raised at all during the hearing, Shenzhen itself told the arbitrator that these were purely legal issues, in its words, not requiring any facts. That's at A225. Again, it's hard to see how the former attorney's testimony can be deemed the sole evidence on an issue when Shenzhen itself told the arbitrator it didn't need any evidence. But even if you got past the evidentiary issue, these weren't pivotal issues. The arbitrator rejected the claim under the FTC rule, not simply because it found that there was no private right of action. He rejected the claim because the rule simply prevents a party from making material modifications to an agreement as compared to the one that's set forth in the party's disclosure document. The arbitrator said that this modification was not material because it had absolutely nothing to do with a hotel that was being renovated. It dealt solely with hotels that were being newly constructed. This hotel was not being newly constructed. That was his conclusion. Again, it's unreviewable. As to the California Franchise Investment Law claim, he rejected it, again, for a legal reason. He determined that Shenzhen's interpretation of the statute, that Hyatt was required to make supplemental disclosures, despite the fact that it was exempt from the statute itself, was an unreasonable reading of the statute. Again, this was not a pivotal issue that depended on testimony. It was a legal issue that the arbitrator resolved as a matter of law against Shenzhen. The last point that I wanted to make, Your Honors, as it concerns Shenzhen's claims about excluding evidence, is that Shenzhen's claims about Ms. Cadwalader's competence and her supposed conflict were also ruled on by the arbitrator. He said that, as I mentioned, if these were issues and there was no evidence presented that they were, they did not go to the enforceability of the franchise agreement, which was a legally binding agreement. Unless the Court has any questions, I have nothing further. I don't see any. Thank you very much. Thank you, Your Honors. The case is taken under advisement.